# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA ROCHA,<br><br>      Plaintiff,<br><br>  v.<br><br>STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS and REHABILITATION, et al.,<br>      Defendants. | Case No. 1:14-cv-00842----BAM<br><br>ORDER GRANTING DEFENDANT DAVID GROVES' MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS |

On August 27, 2014, Defendant David Groves filed a motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6). (Doc. 8.) Defendant Groves contends Plaintiff's claims are barred by res judicata and that the §1983 claims fail to state a claim upon which relief may be granted. Defendant also seeks monetary sanctions. Plaintiff Linda Rocha filed an opposition to the motion on September 26, 2014. (Doc. 23.) Defendant filed a reply on September 30, 2014. (Doc. 24.) The Court conducted a hearing on October 17, 2014. Plaintiff appeared by counsel William Romaine. Defendant David Groves appeared by counsel Mary Horst. At the hearing, the Court asked for supplemental briefing. Plaintiff filed her supplemental briefing on October 31, 2014. (Doc. 31.) Defendant Groves filed his supplemental briefing on November 6, 2014. (Doc. 32.) Both Plaintiff Rocha and Defendant Groves have consented to the Magistrate Judge in this case. (Docs. 14, 15.) Having considered the moving, opposition, and reply papers, the supplemental briefs, the oral argument of counsel and the entire file, the Court rules as follows.

///

# BACKGROUND

*The Earlier Filed Action (Rocha I)*

On November 18, 2011, Plaintiff Linda Rocha filed her first suit against defendant California Department of Corrections and Rehabilitation ("CDCR"), J. Clark Kelso, Receiver ("Receiver,") and California Correctional Health Care Services ("CCHCS") alleging disability discrimination and retaliation in violation of certain rights secured to her by Amendment XIV of the United States Constitution, 29 U.S.C. § 794, 42 U.S.C. § 12112, and 42 U.S.C. § 12132, and 42 U.S.C. § 12203. *Rocha v. California Dept of Corrections and Rehab., Kelso*, Case No.1:11-cv-1954-LJO-BAM ("*Rocha I*"), Doc. 1.

In *Rocha I*, Plaintiff alleged that beginning in November 1997, Defendant CDCR and/or CCHS employed Linda Rocha as an Office Technician in the Substance Abuse Treatment Facility at the Corcoran California State Prison in Kings County, California. *Rocha I* ¶ 9.

In March 2009, Rocha was permanently re-assigned to perform her Office Technician employment at the Corcoran Radiological Facility ("X-Ray facility"). *Rocha I* ¶ 11. Subsequent to this assignment, Plaintiff began to experience severe episodes of major depression, migraines, nausea, and other symptoms associated with depression as well as with allergies. In addition, due to the additional duties of pulling X-Ray film from file folders, Plaintiff began to experience "excruciating pain" from the aggravation of her carpal tunnel syndrome. *Rocha I* ¶ 12.

On December 8, 2010, Plaintiff requested a "reasonable accommodation" for her impairments. *Rocha I* ¶ 14. Specifically, Plaintiff asked that she be assigned to an open workstation outside of the X-Ray department and asked that her duties no longer include pulling X-ray films from their jackets or their film locations. *Rocha I* ¶ 14. Subsequently, Rocha was temporarily assigned to perform her Office Technician duties at the Corcoran Mental Health Facility. *Rocha I* ¶ 15. During this assignment, Plaintiff's symptoms abated and she alleges she was again able to perform her duties without complications. *Rocha I* ¶ 15. After the temporary assignment to the Mental Health Facility, on May 6, 2011, Rocha was ordered to return to her permanent assignment at the Corcoran X-Ray facility. *Rocha I* ¶ 16. After Plaintiff returned to the X-ray facility, her physical and mental impairments immediately returned and she

was required to take a medical leave of absence. In her initial complaint, Plaintiff alleges that Defendants unlawfully discriminated against her by not making reasonable efforts to reasonably accommodate her known disability. *Rocha I* ¶ 19.

Rocha further contends that not only was she denied the accommodations she sought she also alleges she was retaliated against by her supervisors for opposing the discriminatory employment practices. *Rocha I* at ¶ 22. Plaintiff alleges that in response to her request for an accommodation and in response to her complaints about discrimination Defendants restricted the terms of her employment and refused her various privileges.

Almost a year after her initial complaint was filed Plaintiff filed a First Amended Complaint on October 23, 2012. Plaintiff's First Amended Complaint, (*Rocha I* FAC), Doc. 10. Plaintiff amended her complaint to add allegations that in retaliation for seeking a reasonable accommodation and complaining about discrimination, she was "reassigned for disciplinary reasons" to a remote workstation in San Diego, California, more than 250 miles from her residence, on relatively short notice and without her consent. *Rocha I* FAC ¶ 24. Defendant CDCR also refused to reimburse Plaintiff for a substantial part of the entire expense of her proposed relocation. Defendants demanded orally and in writing that Plaintiff present herself at the new workstation in San Diego, California no later than July 9, 2012 or face the prospect of employment sanctions for being absent from her employment without official leave. Plaintiff further alleged that:

> The retaliation herein alleged by defendants and each of them was willful and intentional and was done with the purpose of dissuading plaintiff and others suffering from the disabilities suffered by plaintiff from seeking to enforce their rights and remedies.

*Rocha I* FAC ¶ 27.

Plaintiff's amended complaint also included additional causes of action for employment discrimination and retaliation under the California Fair Employment Housing Act based on the same allegations.

On December 11, 2012, the Court set a scheduling order setting the last day for non-dispositive motions to be filed as August 16, 2013. *Rocha I*, Doc. 36. After some discovery,

Plaintiff accepted an offer of judgment from Defendants pursuant to Rule 68 on June 24, 2013 as follows:

> Judgment in favor of Plaintiff Linda Rocha against Defendants in the sum of $47,500, which sum shall include any liability costs of suit and attorney fees otherwise recoverable by Plaintiff in this action.
>
> By accepting this Offer of Judgment, Plaintiff stipulates that she will not in the future seek employment with the Defendants and/or their agents, representatives, employees, successors, and assigns. This stipulation shall not be considered as part of the monetary value of the Offer of Judgment.

On June 26, 2013, this Court entered judgment pursuant to Defendants F.R.Civ.P 68 offer of judgment and directed the Clerk to close the case. *Rocha I*, Doc. 38.

### *The Current Action (Rocha II)*

In her current complaint *Rocha II*, Plaintiff repeats that she was required to report to a workstation in San Diego, California no later than July 9, 2012 in order to accommodate her disabilities. *Rocha II* ¶ 24. Specifically, Plaintiff alleges that Defendants Jasinda Mohammed and David Groves—the Director of the return to work operation—maliciously re-assigned her to the San Diego workstation. *Rocha II* ¶ 23-24. Plaintiff protested against this re-assignment in large part because there were several "potential locations in the immediate vicinity of Corcoran" that would have accommodated her disability without requiring her to move to San Diego. *Rocha II* ¶ 24.

Rocha protested the San Diego transfer in August 2012 and as result she temporarily returned to her prior working assignment at the Corcoran Substance Abuse facility. Plaintiff alleges that her protests against the San Diego transfer caused embarrassment to Defendant Groves as follows:

> Motivated by a personal desire to requite their anger towards Rocha for protesting placement in the San Diego, California facility and by way of retaliating against her for her demand that she be reasonably accommodated for her disability as required by the Americans with Disabilities Act, defendants Jasinda Mohammed and David Groves used their official positions to take retaliatory action against Rocha by interfering with her numerous requests and applications in the months of August, September, October, November and December of 2012 for re-assignment to a workstation in the vicinity of the Corcoran California Substance Abuse and Treatment facility, other than in the X-Ray Department location. *Rocha II* ¶ 26.

In addition to interfering with her transfer applications, Plaintiff alleges that Groves forced her to undergo unnecessary and duplicative physical and mental examinations to assess her fitness for duty. *Rocha II* ¶ 27. According to Plaintiff, Groves' mandated testing was unnecessary because her personal mental and physical examinations were well documented and "provided [Groves] with substantial evidence of her fitness for duty through the offices of her treating medical and psychological health care providers." *Id.* Plaintiff claims that Groves knew that her treating physician's testing indicated that she was unable to perform work at the X-ray facility, and therefore any additional testing required by Defendant Groves was superfluous. *Id.*

Plaintiff further alleges that "in further attempts to vindicate [his] personal animosity towards [Plaintiff]" Defendant Groves demanded she return to the Corcoran X-Ray Facility by January 15, 2013 or else her employment would be terminated. *Rocha II* ¶ 28. For physical and mental health reasons, Plaintiff refused to report for duty at the X-Ray Facility by January 15, 2013 as directed and as a result, she was terminated. *Id.* She alleges she was terminated for having abandoned her job effective January 15, 2013. *Id.*

On June 2, 2014, Plaintiff filed the current action alleging a: (1) violation of civil rights 42 U.S.C. 1983; (2) breach of collective bargaining agreement against Defendant CDCR; retaliatory termination of employment; (3) retaliation in violation of California Fair Employment and Housing (FEHA); and (4) conspiring, inciting, or aiding in the denial of rights secured by the provisions of the California Unruh Civil Rights Act against Defendants CDCR, J. Clark Kelso, Receiver ("Receiver,"), California Correctional Health Care Services ("CCHCS"), Jasinda Mohammed and David Groves.[1]

Defendant David Groves now seeks to dismiss Plaintiff's claims arguing that Plaintiff's instant suit is barred under the doctrine of res judicata.

---

[1] On August 28, 2014, Plaintiff voluntarily dismissed Defendants J. Clark Kelso and California Correctional Health Care Services from this action.

# MOTION TO DISMISS

## A. Legal Standard

### 1. *Rule 12(b)(6)*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see Fed.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim is brought under Federal Rule of Civil Procedure Rule 12(b)(6) and may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2. *Rule 12(b)(1)*

The defendant seeks Fed.R.Civ.Proc. 12(b)(1) dismissal of plaintiff's claims. F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co*., 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "A federal court is presumed to lack jurisdiction in a

particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989). Limits on federal jurisdiction must neither be disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). A plaintiff bears the burden to establish that subject matter jurisdiction is proper. *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. "The plaintiff always bears the burden of establishing subject matter jurisdiction. In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise." *Valdez v. U.S.*, 837 F.Supp.1065, 1067 (E.D. Cal. 1993). "[T]he burden of proof is on the plaintiff to support allegations of jurisdiction with competent proof when the allegations are challenged by the defendant." *O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 98 (1st Cir.1982).

When addressing an attack on the existence of subject matter jurisdiction, a court "is not restricted to the face of the pleadings." *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir.1988). In such a case, a court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993 (1989); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987).

B. **Request for Judicial Notice**

Courts may take judicial notice of facts whose "existence is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1192 n. 4 (9th Cir. 2008). It must be taken when a party requests it and supplies all necessary information. Fed.R.Evid. 201(d). "Judicial notice" is the court's recognition of the existence of a fact without the necessity of formal proof. *See United States v. Harrison*, 651 F.2d 353, 355 (5th Cir.1981); *Castillo–Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir.1992). Facts proper for judicial notice are those facts not subject to reasonable dispute and either "generally known" in the community, or "capable of accurate and ready determination" by reference to sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.1986) (court may

take judicial notice of official records and reports. The court need not accept as true allegations that contradict facts which may be judicially noticed by the court.) A court may take judicial notice of its own records. *See e.g., Day v. Moscow*, 955 F.2d 807, 811 (2nd Cir.1992). Courts may also take judicial notice of public records. C*achil Dehe Band of Wintun Indians of Colusa Indian Community v. State of Calif.*, 547 F.3d 962, 969 n.4 (9th Cir. 2008). Judicial notice is particularly appropriate for the court's own records in prior litigation related to the case before it. *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361–1362 (10th Cir.2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties).

The parties have asked the Court to take judicial notice of numerous documents. (*See e.g.*, Doc. 10, Exh. A-D.) The Court has taken judicial notice of those documents appropriate for judicial notice and has taken judicial notice of the requested documents that have been referenced specifically in this Order. The Court takes judicial notice of the documents filed in *Linda Rocha v. State of California e.t al,* Case No. 11-1954 to determine whether res judicata precludes Plaintiff's current suit.

### C. Parties' Arguments on the Motion to Dismiss

#### 1. *Defendant Groves' Argument*

Defendant Groves argues that Plaintiff's claims are barred by the doctrine of res judicata because, although Plaintiff raises additional factual retaliation allegations which did not appear in the prior action, her current claims were either previously raised or should have been raised in her prior action. Groves argues that in *Rocha I*, Plaintiff alleged she faced discrimination and retaliation when Defendants failed to reasonably accommodate her disability. According to *Rocha I*, Plaintiff's June 2012 transfer to the San Diego facility was not a reasonable accommodation. In her current action *Rocha II*, Plaintiff alleges that she protested her June 2012 transfer (presumably by filing her prior action) and her considerable protest caused Defendant Groves to become embarrassed and angry at Plaintiff for contesting her transfer.

As a result of his embarrassment/anger, Plaintiff alleges that Groves reacted with three primary acts of retaliation. First, Plaintiff alleges that in retaliation for her protests Defendants Groves used his "official position" to take retaliatory action against Plaintiff by interfering with her numerous request and applications for transfer in the months of August, September, October, November and December 2012.  Second, Plaintiff alleges that Defendant Groves required her to take part in unnecessary medical examinations.  Third, Plaintiff alleges that out of personal motivation, Groves used his official position to order Rocha's return to work by January 15, 2013 at the X-ray Facility at Corcoran, which essentially caused her constructive discharge because she was unable to work at the X-ray center for mental and physical health reasons.[2]

Defendant Groves notes that Plaintiff amended her complaint in *Rocha I* on October 23, 2012 and accepted an offer of judgment in *Rocha I* on June 26, 2013, well after her termination. According to Defendant, the alleged actions taken by Defendant Groves occurred before Plaintiff filed her amended complaint in *Rocha I* and all events occurred before Plaintiff accepted her offer of judgment.  Defendants argue that this provides ample evidence that Plaintiff could have and should have brought her claims against Defendant Groves *in Rocha I* and therefore her claims are barred.

Further, Defendant argues *Rocha I* covered the termination.  Plaintiff's last day at work was December 28, 2012, while *Rocha I* was pending.  Plaintiff was questioned at her depositions on April 10, 2013 and May 14, 2013 about her termination.  According to Defendants, the topic of Plaintiff's termination could have been litigated and was in fact discussed during *Rocha I*. Further, Defendant Groves argues that it is not the fact that her "initial complaint did not mention the termination that controls," it is whether there is an "identity of claims" between the two lawsuits.  *Frank v. United Airlines, Inc*., 216 F.3d 845, 850 (9th Cir. 2000).  The additional allegations are so related that they could have easily been tried in *Rocha I*. Groves cites *Jones-Rankins v. Cardinal Health, Inc.,* 2013 U.S. Dist. LEXIS 75320, 2013 WL 2370591 (D. Ariz.

---

[2] Plaintiff's last day at work was December 28, 2012 and her effective termination occurred on January 15, 2013.

May 28, 2013); *Gilbert v. Maricopa County of Superior Court Dept. of Juvenile Probation,* 2011 U.S. Dist. LEXIS 742, 2011 WL 2511463  (D. Ariz. Jan. 25, 2011)*;* and *Garcia v. Honeywell Intern., Inc.,*  2014 U.S. Dist. LEXIS 77406, 2014 WL 2511509 (S.D. Cal 2014). Each case stands for the proposition that claims that "could have been litigated," even subsequent wrongs, are barred if the claims arise from the same transactional nucleus of facts.

### *2. Plaintiff Rocha's Argument*

Plaintiff argues that *Rocha II* challenges Groves' reaction to *Rocha I* and not the San Diego transfer itself. Plaintiff argues that *Rocha I* dealt solely with Defendant CDCR's failure to provide a reasonable accommodation together with its attempt to transfer her to San Diego and not Groves' retaliation to her demands of an accommodation.  Plaintiff argues *Rocha II* deals with events after that transfer and Groves' retaliation including her termination of employment. Termination was not at issue in *Rocha I* because Plaintiff was still employed when the Amended Complaint was filed on October 23, 2012.

Plaintiff argues that the fact that her January 2013 termination occurred before *Rocha I* was final is of little import.  According to Plaintiff, her termination was not final until after *Rocha I* was closed because she still had recourse to challenge the administrative determination in the State Court.  (Doc. 23 at 2.)   She also argues that a different primary right is at issue in *Rocha II* – her termination of her employment - and not the events leading up to the termination as was the case in *Rocha I*.  Plaintiff argues that the transactions at issue in *Rocha I* and *Rocha II* are distinct: they give rise to different rights and are based upon a distinct set of disparate facts. The wrongful discharge sued for in the instant case did not emanate from a common transactional nucleus as the failure to accommodate and retaliation for requesting accommodations claims that presented in *Rocha I*.  *Rocha I* did not involve wrongful discharge. (Doc. 31 p.3-5.) In sum, Plaintiff argues *Rocha II* is "exclusively about the transactions that led to the termination of Rocha's employment with CDCR: not the transactions that led to her claims for failure to accommodate and retaliation in the earlier complaint." (Doc. 23 at 4.)

# ANALYSIS

### A.    Res judicata Overview

The doctrine of res judicata protects "litigants from the burden of relitigating an identical issue" and promotes "judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). It "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." O*wens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001). Stated differently, "[c]laim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action." *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009); *accord Tahoe Sierra Preservation Council, Inc. v. Tahoe Reg. Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action."). The court applies the doctrine whenever there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties. *Id.*  These three elements constitute a successful res judicata defense. *Tahoe-Sierra Preservation*, 322 F.3d at 1077.

### B.    Elements of "Final Judgment" and "Identity or Privity of Parties"

The Court begins the analysis with the second and third elements of res judicata because these elements are not in dispute. The element of a "final judgment" is satisfied. A final judgment was entered in *Rocha I* on June 26, 2013, pursuant to a Rule 68 offer.

The Court finds that the third element of "privity" is satisfied in *Rocha II*. In *Rocha I*, Plaintiff sued the CDCR. In *Rocha II*, Plaintiff sues Defendant Groves in his individual capacity for his conduct as a supervisor for the CDCR. "Even when the parties are not identical, privity may exist if "there is 'substantial identity' between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Preservation,* 322 F.3d at 1081; *see also Stratosphere Litigation L.L.C. v. Grand Casinos, Inc*, 298 F.3d 1137, 1142 n. 3 (9th Cir. 2002) (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved") (citation omitted); *Adams v.*

*California Dept. of Health Services*, 487 F.3d 684, 692 (9th Cir. 2007) (new defendants were employees of previously named defendant and thus had a close relationship and interests were aligned), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008); *Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action).

Here, while *Rocha II* names Defendant Groves in his individual capacity, all of the claims are for Groves' conduct while acting in his supervisory role for CDCR. Groves' interest, as an employee of CDCR, is aligned with CDCR. CDCR's prior liability in *Rocha I*, as is Groves' potential liability in *Rocha II*, is predicated on the Groves' wrongdoing. Thus, Defendant Groves and CDCR share a common interest in the claims at issue in both cases. Accordingly, privity of interest is satisfied.

**C.     Identity of Claims**

The element of "identity of claims" is disputed between the parties. In determining the "identity of claims," the Court considers four factors:

> (1)     whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action;
>
> (2)     whether substantially the same evidence is presented in the two actions;
>
> (3)     whether the two suits involve infringement of the same right; and
>
> (4)     whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201–02 (9th Cir.1982) (citation omitted). "The last of these criteria is the most important." *Id.* at 1202 (citation omitted); *see also Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917–18 (9th Cir. 2012) (the last of the criteria is the most important). The Court, therefore, turns to the analysis of "same transactional nucleus of facts."

### D.      Same Transactional Nucleus of Facts

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Frank v. United Airlines, Inc*., 216 F.3d 845, 851 (9th Cir. 2000) (quoting *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). Two events are part of the same transaction or series of transactions where the claims share a factual foundation such that they could have been tried together. *W. Systems, Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992). "Different theories supporting the same claim for relief must be brought in the initial action." *Id.*  "[T]he inquiry into the 'same transactional nucleus of facts' is essentially the same as whether the claim could have been brought in the first action." *United States v. Liquidators of European Fed. Credit Bank,* 630 F.3d 1139, 1151 (9th Cir.2011). "A plaintiff need not bring every possible claim. But where claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012).

Plaintiff argues that the cases are distinct because *Rocha II* involves events after the filing of the Amended Complaint in *Rocha I* on October 23, 2012.  *Rocha II* involves the events of August through December 2012 and plaintiff's termination on January 15, 2013. (see e.g., Doc.1 ¶ 26). While *Rocha I* was pending, and before judgment was entered, plaintiff was terminated. Plaintiff argues that the termination is a separate and distinct right, which occurred after plaintiff filed her Amended Complaint in *Rocha I* and could not have been litigated.  In short, *Rocha II* picks up where the Amended Complaint in *Rocha I* left off.

The issue is whether the subsequent events, which occurred In August through December 2012, including Plaintiff's termination, were litigated or could have been litigated in *Rocha I*.[3] Whether two suits arise out of the "same transactional nucleus" depend upon whether they are

---

[3] Defendant Groves argues that the termination was litigated because it was discussed at Plaintiff's deposition. The Court need not reach the factually disputed issue of whether the termination was litigated because the Court finds, *infra*, that termination is within the "transactional nucleus of facts" of *Rocha I* and could have been litigated.

related to the same set of facts and whether they could conveniently be tried together. *Liquidators of European Fed.Credit Bank*, 630 F.3d at 1151; *Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) ("Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.")

In *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir.2000), the Second Circuit determined a trial court had abused its discretion in dismissing a duplicative suit where the new claims had arisen from "events occurring subsequent to the filing of her complaint in the first action." The Second Circuit stated:

> While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit. The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims.

*Curtis,* 226 F.3d at 139 (internal citation omitted).

The Second Circuit's decision in *Curtis* set a rigid time frame for determining whether claims could have been brought, rather than analyzing whether the claims in the later action should be precluded under the "same transactional nucleus of facts" test for claim preclusion. Ninth Circuit authority mandates a more critical analysis of the same nucleus of transactional facts.

The Ninth Circuit authority is not aligned with *Curtis* and has held that "the fact that plaintiff was denied leave to amend does not give h[er] the right to file a second lawsuit based on the same facts." *Adams*, 487 F.3d at 688.  In *Mpoyo*, an employee filed several Title VII claims against his former employer. *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 986 (9th Cir. 2005). After discovery was complete, the employee requested leave to amend his complaint to include other federal claims. *Id.* The district court denied leave to amend and granted summary judgment in favor of the employer on the remaining claims. *Id.* The Ninth Circuit affirmed the judgment on appeal. *Id.* While his first case was on appeal, the employee brought a

new action in the district court, alleging the federal claims he was not permitted to bring in the prior case. *Id.* The district court dismissed those claims on the ground of claim preclusion. *Id.* at 987. On appeal, the Ninth Circuit found that because the two claims arose from the employee's conduct while he was employed "and specifically from the events leading to his termination, his claims relate to the same set of facts." *Id.* Therefore, the subsequent claim arose from the same transaction as the previous claims and was the same claim for the purpose of claim preclusion analysis. *Id.* Thus, if it arises out of the same facts as the already-decided claim, it is the same claim for purposes of claim preclusion.

*Mpoyo* rejected the argument that "events subsequent" are outside the parameters of res judicata: "Though Mpoyo asserts he was unaware of the FMLA and FLSA claims when he filed the initial complaint in *Mpoyo I*, we have held that "[i]gnorance of a party does not ... avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party." *Mpoyo*, 430 F.3d at 988.

Here, *Rocha I* and *Rocha II* share a common transactional nucleus of facts. *Rocha I* and *Rocha II* allege the same transactional nucleus of facts pertaining to the allegedly discriminatory, retaliatory and harassing conduct of Defendant during Plaintiff's employment. Both actions involve Plaintiff's employment, her physical limitations, actions taken by her employer in response to her requests for accommodation, protests against the accommodations offered, and retaliatory conduct. Indeed, certain of the allegations in *Rocha II* are duplicative allegations of *Rocha I* allegations challenging the transfer to the San Diego facility. The same series of events led to plaintiff's harm, and these events could be conveniently tried together. The escalation of retaliation, culminating in discharge, falls within the same factual circumstances: Plaintiff's employment, requests for accommodation, retaliation, and resulting damage.

E. **The Other *Costantini* factors**

Here, all of the other *Costantini* factors also are met; thus establishing identity of claims for purposes of applying res judicata. Certainly, the same evidence would be presented as the facts in *Rocha I* and *Rocha II*. The evidence regarding the motive for the transfer, retaliatory

conduct, and resulting harm would be identical. Additional retaliatory conduct occurred after August 2012 and included the termination. Nonetheless, the retaliatory conduct occurring after August 2012 is part of the same series of events as a continuation of the same allegedly wrongful conduct arising from Plaintiff's request for disability accommodation. While additional evidence might be presented in *Rocha II* regarding the termination, that additional evidence is not enough to establish the claim arises from a different transactional nucleus of facts. *Int'l Union of Operating Eng'rs–Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (9th Cir.1993) ("The fact that some different evidence may be presented in this action ... does not defeat the bar of res judicata.").

Further, the rights or interests established in *Rocha I* "would be destroyed or impaired" if *Rocha II* proceeded. The CDCR defended *Rocha I*, and the resources spent resolving the matter now necessarily would be duplicative. Significantly, the offer of judgment was offered and entered after the date of Plaintiff's termination, and included a judgment term stating: "By accepting this Offer of Judgment, Plaintiff stipulates that she will not in the future seek employment with the Defendants …" (*Rocha I*, Case 11-1954, Doc. 37) This language suggests that defendants believed the issues involving Plaintiff's employment and her pre-offer termination were resolved. Thus, Defendant's interest in resolving *Rocha I* would be impaired were Plaintiff permitted to now raise her termination. It is undisputed that Plaintiff's termination was discussed in discovery in *Rocha I*, and that her termination occurred before her deposition and well before the entry of judgment. Thus, rights established by the judgment would be impaired or destroyed.

The parties' dispute whether her termination was actually "litigated" in *Rocha I*, but the Court does not find whether the termination was "litigated" dispositive of res judicata. The Ninth Circuit authority is whether the claims "could have been litigated."

> Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led

> to the judgment; rather, the relevant inquiry is whether they could have been brought.

*Tahoe-Sierra Preservation,* 322 F.3d at 1078. Newly articulated claims based on the same nucleus of facts may still be subject to res judicata if the claims could have been brought in the earlier action. The termination claim arose during the pendency of *Rocha I* and long before judgment was entered on June 26, 2013 or before the deadline in August 2013 for amending the complaint to add a termination claim. The *Rocha I* complaint was amended in October 2012 and the non-dispositive motion filing date (i.e., filing another motion to amend or supplementation) was not until August 2013. Months prior, in January 2013, Plaintiff was terminated. The termination claim and retaliatory conduct during the time frame of September–December 2012, could have been brought in *Rocha I*. The common nucleus and the sufficient time frame for asserting a termination claim warrant the Court finding that the claims in *Rocha II* are barred by res judicata.

Plaintiff argues that termination of employment is a different right at issue in *Rocha II* than in *Rocha I*. Both actions, however, involve plaintiff's interest in continued employment and the terms of her employment. At issue in both actions is the same right to compensation for Plaintiff's position. Thus, lost employment rights and lost compensation are the same rights in both actions. To the extent that the two actions involve distinct rights, "this factor alone does not differentiate the causes of action." *Adams*, 487 F.3d at 691. As noted above, "the most significant factor is that the causes of action arise from a common nucleus of facts." *Id*.

Both cases center around plaintiff's employment history, physical limitations, qualifications and allegedly improper treatment based upon those limitations. Both center on the allegedly discriminatory, retaliatory and harassing conduct of Defendant during Plaintiff's employment. It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which Plaintiff chose to frame her complaint.

While Plaintiff contends that the prior case did not arise from her termination, and that *Rocha II* arises from the actions by Defendants Groves in retaliation for *Rocha I*, the Court finds

17

that it was the circumstances leading up to Plaintiff's termination that form the same "core of operative facts" in both actions.

Underlying the res judicata doctrine is the recognition that a plaintiff's interests in a full and fair opportunity to be heard must be considered against the respect for a defendant's efforts and expense in defending itself. *Marin v. HEW, Health Care Fin. Agency*, 769 F.2d 590, 594 (9th Cir.1985). In addition to private interests, res judicata also serves important public interests, including "avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth.of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir.1995). Permitting these later-filed claims to proceed would create incentive for plaintiffs to hold back claims and have a second adjudication. *Mpoyo*, 430 F.3d at 989.

### F. Motion for Sanctions

Defendant claims that the imposition of sanctions is warranted under 28 U.S.C. § 1927, and this Court's inherent power because Plaintiff filed the same claims earlier in this Court that were previously dismissed after Plaintiff accepted an offer of judgment and agreed not to seek future employment with CDCR. (Doc. 9 at 10). Defendant seeks approximately $8,100 in sanctions, an amount representing the attorney's fees and costs incurred by Defendant in seeking the dismissal of Plaintiff's action before this Court. *See* Declaration of Mary Horst ("Horst Decl.") ¶ 6-9, Doc. 11.

28 U.S.C. § 1927 provides that any attorney who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

> "Attorney fees under section 1927 are appropriate if any attorney's conduct is in bad faith; recklessness satisfies this standard. The Ninth Circuit has also required a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. Moreover, the Ninth Circuit has cautioned that sanctions should be reserved for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."

*Gomes v. American Century Companies, Inc.*, 2010 U.S. Dist. LEXIS 57400, 2010 WL 1980201 at *3 (E.D. Cal. May 17, 2010).

Defendant asserts that sanctions should be assessed against Plaintiff's counsel because (1) Plaintiff was represented by the same counsel in her prior action; (2) Plaintiff's counsel filed not only the original complaints but also filed the Rule 68 notice of acceptance; (3) Plaintiff's counsel was aware of the terms of the agreement which specifically state that Plaintiff agreed not to seek future employment with CDCR; (4) Plaintiff's counsel was aware of the operative facts that are the basis of both complaints and that they arise from a common nucleus of operative fact and finally (5) the settlement was agreed to six months after Plaintiff had been directed to work at the San Diego location and six months after her last day at work. (Doc. 9 at 12.)

The Court will not order sanctions against Plaintiff's counsel under 28 U.S.C. § 1927. While there was overlap between the two complaints, there were enough new factual allegations in *Rocha II* to support the good faith belief that Plaintiff's claim for wrongful discharge was separate and distinct from her earlier retaliation and employment discrimination claims alleged in *Rocha I*. The allegations in *Rocha I* did not include wrongful discharge and Plaintiff's employment was not officially terminated until January 15, 2013—almost three months after Plaintiff filed her FAC in *Rocha I*. As a result, it was not unreasonable for Plaintiff's counsel to argue that a different primary right could be at issue in *Rocha II*—Plaintiff's final termination of her employment and not the events leading up to the termination as was the case in *Rocha I*. A sanctions award pursuant to 28 U.S.C. § 1927 requires a finding that the attorney to be assessed not only multiplied the proceedings but did so recklessly or in bad faith. *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1128 (9th Cir. 2011). Given that the Court does not find that Plaintiff's counsel has litigated in bad faith, with recklessness, or for an improper purpose, the Court declines to impose sanctions under § 1927.

///
///
///
///
///

**ORDER**

For the foregoing reasons, the Motion to Dismiss is GRANTED and the claims against Defendant Groves are dismissed with prejudice as they are barred by the doctrine of res judicata. The Court DENIES the motion for sanctions. The Clerk of the Court is directed to enter judgment in favor of defendant David Groves and against plaintiff Linda Rocha.

IT IS SO ORDERED.

Dated:   **November 24, 2014**         /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE